## Case No. 10,402.

### The OCEAN BELLE.

[6 Ben. 253.] [1]

District Court, S. D. New York. Nov., 1872.

JURISDICTION — RIGHTS OF MAJORITY AND MINORITY SHIPOWNERS—POWER TO SELL—BOND FOR SAFE RETURN.

1. A court of admiralty has no power to decree a sale of a vessel, at the instance of the owners of a minority interest, except, perhaps, as the result of the failure of the owners of the majority interest to give security for the safe return of the vessel.

2. A court of admiralty has power to decree a sale, in case of a dispute between owners of equal moieties, as to the employment of the vessel.

[Cited in Coyne v. Caples, 8 Fed. 640.]
[See The Annie H. Smith, Case No. 420.]

3. A court of admiralty has no jurisdiction in matters of accounting between part owners of a vessel.

[Cited in The John E. Mulford, 18 Fed. 457; The H. E. Willard, 53 Fed. 601; The Eclipse, 135 U. S. 608, 10 Sup. Ct. 876.]

4. A court of admiralty cannot require the owners of a majority interest in a vessel to give a bond to the minority interest to cover indebtedness of the vessel to the minority owners, or to indemnify them against loss in her future employment.

In admiralty.

E. D. McCarthy, for libellants.

C. Donohue, for claimants.

BLATCHFORD, District Judge. The libel in this case, filed in December, 1869, styles itself a libel "in a cause of possession and sale." It prays for no process against the vessel or against any person. On the filing of the libel, a monition commanding an attachment of the vessel was issued. Under it, the vessel was attached. A claim to the vessel was filed on behalf of the owners of eleven-sixteenths of her. She was discharged

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

from arrest, on a bond in the sum of $4,500, conditioned to abide the decree of the court.

The libel states, that it is brought against the vessel, and against all persons lawfully intervening for their interest in her, and especially against Richards, Adams & Co., owners of two-sixteenths of her; that the libellants are the owners of five-sixteenths of her, having owned four-sixteenths since the 30th of December, 1864, and one-sixteenth since the 3d of November, 1865; that they bought the four-sixteenths when she was new, and paid for it a proportional part of $14,000, and that they paid for the one-sixteenth a proportional part of $12,000; that, by mismanagement, she has depreciated in value; that, although, since December, 1864, nearly $4,000 of repairs have been put upon her, she is not now worth more than $6,500; that her depreciation is also due to the fact that she has been controlled by parties who now have but a nominal interest in her, and who have never owned more than two-sixteenths of her, and to the fact that her owners have always been at variance as to what voyages she should make, who should command her, and what repairs, if any, should be put upon her; that, for the past three years, from year to year, she has lost money to her owners; that, in no one year during the past three years, has she earned enough, over and above expenses, to pay interest, to say nothing of necessary insurance; that, during the year 1866, the libellants advanced considerable money to pay her expenses; that, in September, 1866, they paid for her repairs, when she put into Newport in distress, and have never been repaid therefor; that she is now unfit for sea, requiring to be refitted as to her sails, and rigging, and to have other repairs, at a cost of not less than $2,000; that their interest in the vessel, bought for $4,250, is not worth more than $2,000, and they have offered to sell it to Richards, Adams & Co. for that sum, which offer has been refused; that the value of the vessel is every day depreciating; that, for five years, she has made but one or two successful voyages; that, under her present ownership and management, she never will make successful voyages; that, unless this court shall intervene to protect the libellants, their whole interest will quickly be lost to them; that they have frequently offered their co-owners either to buy or sell, on the same terms, whether as buyers or sellers, but no result has been reached, or can be; that the ownership of the vessel is, the libellants five-sixteenths, which is the largest belonging to any single individual or firm, one Emery, formerly master of the vessel, three-sixteenths, one Farwell, one-sixteenth, one Locke, one-sixteenth, one Barnes, one-sixteenth, one Caldwell, one-sixteenth, one Nickerson, two-sixteenths, and Richards, Adams & Co., ship's husbands and agents of the vessel, two-sixteenths, but only nominally, they having transferred it to another; that the vessel is about to sail on a voyage, but whither

the libellants do not know; and that they have protested against her further use and employment.

The prayer of the libel is for a decree, that the vessel be sold, for the benefit of her creditors and owners, the proceeds to be applied, first, to the payment of all her just debts, and the balance to be then distributed among her owners; that, until such decree and sale, the libellants be given possession of the vessel, to be used by them prudently and with discretion, they offering to give a bond, in double the amount of the value of all adverse interests in the vessel, to use her with care and prudence, and to render just accounts of all her earnings and expenses, and to do such other things as the court shall impose, in the condition of the bond; and that, in case the vessel shall be given over to the use and possession of owners other than the libellants, a bond be required of them, in double the value of the interest of the libellants in the vessel, and also in double the further amount of the indebtedness of the vessel to the libellants for moneys advanced, and that such bond shall indemnify the libellants against further loss, and guarantee to them the payment of moneys expended on account of the vessel such expenses to be assessed by a commissioner of the court.

The claimants of eleven-sixteenths of the vesssel except to the libel on these grounds: (1.) It does not state a cause of action cognizable in this court; (2.) This court has no power under the statements in the libel, to take the possession of the vessel from the claimants, or to deliver it to the libellants; (3.) This court has no jurisdiction to order the sale of the vessel to pay her debts; (4.) The libellants do not set up any facts that entitle them to the interference of the court. They also answer the libel, taking issue on its material allegations, and praying for its dismissal.

The main prayer of the libel is for a sale of the vessel. There is an incidental prayer, that, until the sale, possession of the vessel be given to the libellants; and that, if possession be given to the other owners, a bond of a certain character be required from them.

The court has no power to order a sale of this vessel, on the facts set out in the libel, to pay the debts and distribute the residue of the proceeds, on the demand of the owners of five-sixteenths of her, and against the will of the owners of the rest, except, perhaps, as the result of a failure of the owners of the eleven-sixteenths to give security for the safe return of the vessel. Such power of sale has never been established in this country. A power of sale has been exercised where the dispute was between the owners of equal moieties, as to undertaking a particular voyage or adventure, as in Davis v. The Seneca, 18 Am. Jur. 486, and in The Vincennes [Case No. 16,945], cited in 2 Pars. Shipp. & Adm. 343. The power is thus expressly limited

by Judge Story, in his treatise on Partnership (section 439), and in his opinion in The Orleans v. Phœbus, 11 Pet. [36 U. S.] 175, 183. In that opinion he says, speaking for the court: "The jurisdiction of courts of admiralty, in cases of part owners, having unequal interests and shares, is not, and never has been, applied to direct a sale, upon any dispute between them as to the trade and navigation of a ship engaged in maritime voyages, properly so called. The majority of the owners have a right to employ the ship in such voyages as they may please, giving a stipulation to the dissenting owners for the safe return of the ship, if the latter, upon a proper libel filed in the admiralty, require it. And the minority of the owners may employ the ship in the like manner, if the majority decline to employ her at all."

Nor has this court any power to take the vessel out of the possession of the majority owners, and put her into the possession of the minority owners. As the majority intend to employ her on a voyage, they have a right to select the voyage, and to keep possession of the vessel, while she is employed, subject only to the requirement of giving bond for her safe return, if such bond is required.

The bond asked for by the libel, in case the vessel is left in the possession of the other owners, is one which this court has no power to require, except so far as the libel may be regarded as asking for a bond for the safe return of the vessel. The court has no jurisdiction in matters of account between part owners of a vessel. The Orleans v. Phœbus, 11 Pet. [36 U. S.] 175, 182; Grant v. Poillon, 20 How. [61 U. S.] 162; Ward v. Thompson, 22 How. [63 U. S.] 330. It follows, therefore, that it cannot require the other owners to give a bond to the libellants to cover the past indebtedness of the vessel to the libellants, or to indemnify the libellants against future loss in the employment of the vessel. Besides, such a proceeding would be substantially to permit the libellants to libel the vessel in rem for a claim alleged to be due by her to them as owners, and that for a claim the amount of which cannot be ascertained, except as the result of an accounting among all the owners.

The libel does not ask for security for the safe return of the vessel, nor has it any prayer for general relief. The exceptions are allowed, so far as the second and third grounds of exception are concerned. The first and fourth will be allowed, and the libel will be dismissed, unless the libellants shall apply for leave to amend their libel, so as to make it one praying for security for the safe return of the vessel.

---

OCEAN BELLE, The. See Case No. 10,961.

OCEAN BELLE, The (PENT v.). See Case No. 10,961.